(October 20, 1915.)

ELTON OSBORN, an Infant, by CHAS. S. OSBORN, His Guardian *ad Litem*, Appellant, v. FRANK T. CARY, Respondent.

[152 Pac. 473.]

EVIDENCE—EXPERT TESTIMONY—PHYSICIAN AND PATIENT—NEGLIGENCE —CROSS-EXAMINATION OF MEDICAL EXPERT—READING FROM BOOKS —INSTRUCTIONS.

1. Where the only purpose of a question propounded to a medical expert was to show that the symptoms of two diseases are so dissimilar that a physician of ordinary skill and ability can readily distinguish one of them from the other and that therefore respondent, who is a physician, ought to be able to distinguish them, and where the respondent has testified that he was able to distinguish one of these diseases from the other, the evidence sought to be adduced by the question was immaterial.

2. Where a patient has been treated for septicemia, which treatment was discontinued prior to the commencement of the action,

and where the cause of action, if one exists, arises not out of improper treatment of that disease, but out of the negligence of respondent in failing to correctly diagnose appellant's ailment as osteomyelitis, it is immaterial what the result of the treatment would have been had it been continued, and it is equally immaterial what the correct treatment for osteomyelitis is.

[As to burden of proving want of skill and care by physician or surgeon, see note in 93 Am. St. 665.]

3. While it is a general rule that books upon scientific subjects are not admissible in evidence, except after an expert witness has referred to a particular work to sustain his opinion, in which case only such work may be admitted to contradict him in that opinion, it is also a well-established rule that when a witness is testifying as an expert, it is competent to test his knowledge and accuracy upon cross-examination by reading to him or having him read from standard authorities upon the subject of his examination and by asking him whether he agrees or disagrees with them.

4. All the instructions given in a case must be read and considered together as a whole, and, where they are not inconsistent but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole instruction rather than to an isolated portion thereof.

5. A requested instruction that if the jury find from the evidence that the defendant was employed to treat the plaintiff and that he undertook to attend upon him, the law presumes that such employment lasted during the sickness of plaintiff, and the relation of physician and patient continued between plaintiff and defendant until it was ended by the consent of the parties or revoked by the express dismissal of the defendant by the plaintiff, is properly refused where it appears that after his employment a condition arose in the affairs of the defendant whereby it became practically impossible for him to visit his patient or to treat him, and where he was neither notified of a change in the patient's condition nor called upon to administer further treatment.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action for damages. Judgment for defendant. *Affirmed.*

Edward K. Walsh, W. T. Stafford and Sutphen & Sutphen, for Appellant.

It is a general rule of evidence that medical books are not admissible in evidence, except after a medical expert has re-

ferred to a particular medical work to sustain his opinion, in which case only such work may be admitted to contradict him in that opinion. (*Gallagher v. Market St. Ry. Co.*, 67 Cal. 13, 56 Am. Rep. 713, 6 Pac. 869.)

It is not proper for counsel on cross-examination to call the attention of a medical witness, who has testified to his own opinions, to certain medical works and read from them, to contradict the witness' testimony. (*Hall v. Murdock*, 114 Mich. 233, 72 N. W. 150; *Knoll v. State*, 55 Wis. 249, 42 Am. Rep. 704, 12 N. W. 369; Jones on Evidence, 2d ed., sec. 579; *Marshall v. Brown*, 50 Mich. 148, 15 N. W. 55; *People v. Millard*, 53 Mich. 63, 18 N. W. 562; *Bloomington v. Schrock*, 110 Ill. 219, 51 Am. Rep. 678; *Lilley v. Parkinson*, 91 Cal. .655, 27 Pac. 1091; *Fisher v. Southern Pac. R. Co.*, 89 Cal. 399, 26 Pac. 894; *Pahl v. Troy City R. Co.*, 81 App. Div. 308, 81 N. Y. Supp. 46; *Matter v. Mason*, 60 Hun, 46, 14 N. Y. Supp. 434; *State v. Coleman*, 20 S. C. 441; *Elliott v. Ferguson*, 37 Tex. Civ. 40, 83 S. W. 56; *St. Louis etc. R. Co. v. Jones* (Tex.), 14 S. W. 309; *Link v. Sheldon*, 64 Hun, 632, 18 N. Y. Supp. 815.)

It is difficult to estimate the injury which the appellant's case suffered by reason of the respondent's counsel being permitted to read a few disjointed sentences to the witness from a medical work. These excerpts were dependent for their full meaning on the whole context which was not read, and standing alone would mislead the jury to believe they stated facts contradictory of what the witness had testified to.

Instruction No. 21 charged the jury that, "before the plaintiff in this case can recover it will be necessary for him to prove to your satisfaction that he had osteomyelitis at the time that the defendant treated him. . . . . " This instruction did not require the jury to "believe from the evidence" the facts assumed in it, and it is therefore objectionable. (*Parker v. Fisher*, 39 Ill. 164; *Stratton v. Cent. City Horse Ry. Co.*, 95 Ill. 25; Sackett's Instructions to Juries, 1st ed., sec. 26.)

It is uniformly held that instructions should be predicated on belief from the evidence. (2 Current Law, 466; *Yazoo & M. V. Ry. Co. v. Smith*, 82 Miss. 656, 35 So. 168; *Chicago City*

*R. Co. v. Carroll,* 206 Ill. 318, 68 N. E. 1087.) Plaintiff's requested instruction No. 6, to the effect that the law presumed that the doctor's .employment lasted during the sickness of the patient or until it was ended by the parties or revoked by the plaintiff, stated a sound rule of law of the case. (*Lawson v. Conaway,* 37 W. Va. 159, 38 Am. St. 17, 16 S. E. 564, 18 L. R. A. 627. See notes to *Adams v. Henry,* Ann. Cas. 1912C, at p. 831.)

W. P. Guthrie, E. M. Wolf, J. W. Porter and J. E. Davies for Respondents.

Excerpts from a medical book may be read to an expert witness on cross-examination. (*Western Assur. Co. v. J. H. Mohlman Co.,* 51 U. S. App. 577, 83 Fed. 811, 28 C. C. A. 157.)

The state of Iowa has a statute which is similar to sec. 5990, Rev. Codes. Under that statute it was held that medical works come within the purview of such statutes and can be introduced in evidence when otherwise competent and relevant to issues in the case at trial. (*Donaldson v. Mississippi & M. R. Co.,* 18 Iowa, 280, 87 Am. Dec. 391; *Brodhead v. Wiltse,* 35 Iowa, 429; *Quackenbush v. Chicago & N. W. R. Co.,* 73 Iowa, 458, 35 N. W. 523; *Peck v. Hutchinson,* 88 Iowa, 320, 55 N. W. 511; *Kuhns v. Chicago, M. & St. P. R. Co.,* 65 Iowa, 528, 22 N. W. 661.)

MORGAN, J.—This action was commenced by the appellant, who is an infant and who appears by guardian *ad litem,* against the respondent, who is a physician and surgeon, to recover damages because, as is alleged in the complaint, respondent, having been employed in his professional capacity to treat appellant, negligently and unskillfully diagnosed his disease and prescribed and administered wrong treatment for the ailment from which he was suffering.

It is appellant's contention that on or about the 14th of November, 1911, he was sick and afflicted with a disease known to the medical profession as osteomyelitis of the tibia of the right leg, and that from the last-named date until on

or about March 12, 1912, the respondent, having been employed to treat him, by reason of negligence and unskillful diagnosis of his ailment, treated him for septicemia, greatly to his injury and damage.

The contention of respondent, as it appears from the transcript, is that he was employed to attend appellant on or about the 14th of November, 1911; that he correctly diagnosed appellant's disease to be septicemia and administered the proper treatment therefor and that his employment ended on or about February 10, 1912.

This case has been before the court heretofore and the further facts necessary to the present consideration of it will be found in case of *Osborn v. Carey,* 24 Ida. 158, 132 Pac. 967.

The trial of the present case resulted in a verdict and judgment for the defendant, from which this appeal is taken.

Appellant relies upon 23 assignments of error, only a part of which present questions worthy of discussion, and these will be grouped in order that they may be more readily disposed of.

Certain of these assignments are based upon the action of the court is sustaining respondent's objections to questions propounded to a witness who had qualified as a medical expert; these questions are similar and one of them is as follows:

"Do the symptoms of the disease of osteomyelitis in either one of its two stages bear such resemblance to the disease of septicemia that a physician of ordinary skill and learning, treating a patient suffering with osteomyelitis, would be misled into the belief that the patient was suffering with septicemia?"

It appears from the transcript that respondent was called as the first witness for appellant and was examined pursuant to the provisions of a law enacted by the legislature of 1909 (Sess. Laws 1909, p. 334), providing for the examination as a witness of a party to an action on behalf of the adverse party, and that in the course of his examination he testified that he knew the difference in the symptoms of osteomyelitis and septicemia; that the patient, during the time he treated him, was not afflicted with the former, but was suffering from the latter disease and that he treated him for it.

The only possible purpose of the questions to which the objections were sustained was to show that a physician of ordinary skill and ability could readily distinguish one of these diseases from the other, and that therefore respondent ought to have been able to distinguish them. Since respondent had testified that he was able to distinguish them and that he diagnosed appellant's ailment to be septicemia and not osteomyelitis, the evidence sought to be adduced by the questions was immaterial, and, while the objections were not made upon that ground, no injury resulted to appellant by their being sustained.

Assignments of error numbered 4 and 12 may be treated together. They call into question the action of the court in sustaining objections to certain questions propounded to some of appellant's expert witnesses. One of these questions is, in substance: "What would have been the result and effect on Elton Osborn if the treatment administered as described and assumed in the previous hypothetical question had been continued without further or different treatment?" The other is: "Now, assuming the same state of facts and treatment as were enumerated in the previous question, what, in your opinion, might reasonably have been done by the attending physician, that is, what treatment would a reasonably skillful physician have attempted in that case?" These questions were objectionable because one of the hypothetical questions therein referred to assumed that during the entire period of the treatment the patient was suffering from and being treated for osteomyelitis, while the testimony of respondent shows that he diagnosed his ailment as and treated him, not for that disease, but for septicemia, and since the treatment for septicemia was not continued, it does not appear to be material what the result of its continuance would have been, nor does it appear to be material what the correct treatment for osteomyelitis is, since the respondent testified that he did not administer that treatment. The cause of action in this case, if one exists, arises, not out of improper treatment for septicemia, but out of the negligence of respondent in fail-

ing to correctly diagnose appellant's ailment and to treat it as osteomyelitis.

The action of the court in permitting counsel for respondent, in the cross-examination of certain of appellant's expert witnesses, to read from a medical and surgical text-book which was admitted by the witnesses to be a standard authority upon the subject about which they were testifying is assigned as error. Excerpts were read from the book; it was passed to the witnesses and they were asked whether they agreed or disagreed with it. This course, of cross-examination was objected to by counsel for appellant and the objection was overruled. We find no error in the ruling of the trial court in this particular.

While it is the general rule that books upon scientific subjects are not admissible in evidence, except after an expert witness has referred to a particular work to sustain his opinion, in which case only such work may be admitted to contradict him in that opinion, it is also a well-established rule that when a witness is testifying as an expert, it is competent to test his knowledge and accuracy upon cross-examination by reading to him or having him read extracts from standard authorities upon the subject of his examination and by asking him whether he agrees or disagrees with them. This is in no sense the introduction of the contents of the books in evidence.

In a note to the text in 1 Greenleaf on Evidence, sec. 440, p. 579 (15th ed.), it is said: "Moreover, it is a proper method of cross-examination, in order to test the learning of a witness who testifies as an expert, to refer to books of approved authority upon the subjects under investigation, and question him in regard to them." (See, also, Underhill on Evidence, sec. 189; 3 Jones on Evidence, sec. 579, p. 745; *Connecticut Mut. Life Ins. Co. v. Ellis*, 89 Ill. 516; *Hess v. Lowrey*, 122 Ind. 225, 17 Am. St. 355, 23 N. E. 156, 7 L. R. A. 90; *Louisville etc. Ry. Co. v. Howell*, 147 Ind. 266, 45 N. E. 584; *Fisher v. Southern Pac. R. Co.*, 89 Cal. 399, 26 Pac. 894; *Clukey v. Seattle Elec. Co.*, 27 Wash. 70, 67 Pac. 379; *Pinney v. Cahill*, 48 Mich. 584, 12 N. W. 862; *Egan v. Dry Dock etc. Ry. Co.*,

12 App. Div. 556, 42 N. Y. Supp. 188; *Byers v. Nashville etc. R. Co.,* 94 Tenn. 345, 29 S. W. 128; *Sale v. Eichberg,* 105 Tenn. 333, 59 S. W. 1020, 52 L. R. A. 894; *Williams v. Nally,* 20 Ky. Law, 244, 45 S. W. 874; *Gulf etc. Ry. Co. v. Farmer,* 102 Tex. 235, 115 S. W. 260.)

In the course of the opinion in the case last above cited, the court, quoting from *Egan v. Dry Dock etc. Ry. Co., supra,* said: "The reference to books in such cases is not made for the purpose of making the statements in the books evidence before the jury, but solely for the purpose of ascertaining the weight to be given to the testimony of the witness."

Assignments of error were predicated on certain instructions given to the jury and on the refusal of the court to give an instruction asked for by appellant. The instructions given by the court, taken as a whole, clearly state the law applicable to the case.

In case of *Tarr v. Oregon Short Line R. R. Co.,* 14 Ida. 192, 125 Am. St. 151, 93 Pac. 957, it is said:

"Again we have repeatedly held that all the instructions given in a case must be read and considered together as a whole, and that where they are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole instruction rather than to an isolated portion thereof. (*Lufkins v. Collins,* 2 Ida. 256 (234), 10 Pac. 300; *State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *Hansen v. Haley,* 11 Ida. 278, 293, 81 Pac. 935; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Neil,* 13 Ida. 539, 90 Pac. 860, 91 Pac. 318.)"

The instruction asked for and refused is as follows:

"The court instructs the jury, that if you find from the evidence that the defendant was employed to treat the plaintiff in this case and that he undertook to attend upon him as alleged in the complaint, the law presumes that such employment lasted during the sickness of the plaintiff, and the relation of physician and patient continued between the plaintiff and defendant until it was ended by the consent of the parties, or revoked by the express dismissal of the defendant by the plaintiff."

The contention of appellant is that the respondent treated him from on or about the 14th of November, 1911, until on or about March 12, 1912. Respondent contends that he treated appellant from on or about March 14, 1911, until on or about February 10, 1912, and the record discloses that he did not see the patient after the last-mentioned date until after other physicians and surgeons had been employed upon the case in his stead.

It appears that about the 12th of February, 1912, a condition arose in the affairs of respondent whereby it was practically impossible for him to visit appellant or to treat him during a considerable period of time thereafter, and that he instructed appellant's father to continue the treatment which he, respondent, had theretofore been administering, and to advise him promptly should any change occur for the worse; that no notice was given to respondent of any change in appellant's condition; that he was neither called upon to further treat his patient nor dismissed from the case, and that other physicians and surgeons were called about the 12th of March, 1912.

Assuming that the requested instruction correctly states a general principle of law, it will be readily seen it has no proper application to the facts above recited, for it contemplates that no change had occurred in the affairs of the physician whereby he would be prevented from properly discharging his duties to his patient. The requested instruction was properly refused.

A number of assignments of error have been made which we have not discussed, but we have carefully examined the record with respect to them and find them to be without merit.

We find no error in the record and the judgment appealed from is affirmed. Costs are awarded to respondent.

Sullivan, C. J., and Budge, J., concur.