The **YACHT CLUB, a Utah non-profit membership corporation, Plaintiff,**

v.

**UTAH LIQUOR CONTROL COMMISSION, Defendant.**

**No. 18028.**

Supreme Court of Utah.

April 18, 1984.

G. Blaine Davis, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for defendant.

HALL, Chief Justice:

The Utah Liquor Control Commission ("Commission") suspended The Yacht Club's ("Club") state store operation and consumption and storage license because of findings that the Club had made an unlawful sale of an alcoholic beverage to a non-member in violation of U.C.A., 1953, § 16-6-13.1(9) (Supp.1983). We affirm.

At a hearing before a hearing examiner for the Commission, William Pectol, a liquor law enforcement agent, testified that, although he was not a member, he had entered the Yacht Club on April 20, 1981, and purchased a "VO and Coke." Pectol claimed that he placed a sample of the drink in a vial, which sample was later sent to the state chemist for testing. Pectol testified that he consumed the remainder of the drink and that it did contain alcohol, although he could not verify the percentage. He further claimed that the drink and several others that he ordered and consumed made him intoxicated.

The hearing examiner admitted the chemist's toxicology report, which stated that the drink sample contained more than one-half of one percent of alcohol by weight, into evidence over objection of the Club. The Club claimed that no foundation was laid as to the authenticity of the report. Based on Pectol's testimony and the toxicology report, the hearing examiner recommended to the Commission that the Club's license and operation be suspended for thirty days and that hearing costs be assessed to the Club. The Commission accepted that recommendation and suspended the Club's license and operation.

The Club petitions for review of that order of suspension, contending that the toxicology report was improperly admitted into evidence and that without it there was insufficient evidence to prove a violation.

The Club was found to be in violation of § 16-6-13.1(9), which states:

No person other than a member or guest who holds a valid guest card issued pursuant to the provisions of subsection 16-6-13.7(13) may make any purchase from a *state store* located on the premises of a social club, recreational, athletic, or other kindred association. [Emphasis added.]

The Utah Liquor Control Act[1] defines "state store" as an outlet for the sale of "liquor" on the premises.[2] It further de-

1. U.C.A., 1953, §§ 32-1-1, *et seq.*

2. U.C.A., 1953, § 32-1-3.

fines "alcoholic beverage" as liquor[3] and "liquor" as any drink "containing more than one-half of one per centum of alcohol by weight ...."[4] To support the Commission's finding of a violation in this case, the evidence must show that the drink purchased, "VO and Coke," was both an alcoholic beverage and liquor, as defined by the statute.[5] To do so, the Commission must prove that the drink purchased contained more than one-half of one percent of alcohol by weight.[6]

The Commission contends that the toxicology report, admitted over the objection of the Club as to the report's authenticity, conclusively proves that the drink purchased was liquor. The Commission relies both on U.C.A., 1953, § 32–1–32.2(d) and U.C.A., 1953, § 32–8–33 to support its claim that no foundation for the report need be laid before its introduction, and no supporting testimony as to its authenticity need be provided. Section 32–1–32.2(d) provides in pertinent part:

Technical rules of evidence need not be applied in the conduct of such hearings before the commission or the council.

More specifically, § 32–8–33 provides:

In any prosecution under this act, or the regulations, a certificate or report signed or purporting to be signed by a state chemist or an assistant state chemist as to the analysis or ingredients of any alcoholic beverage or other fluid or any preparation, compound or substance, when introduced in evidence shall constitute prima facie evidence of the facts stated in such certificate or report and of the authority of the person giving or making the same, and shall be admissible in evidence without any proof of appointment or signature.

3. *Id.*

4. *Id.*

5. *DeFusion Co. v. Utah Liquor Control Comm'n, Utah,* 613 P.2d 1120 (1980).

6. *Id.*

7. *Sandy State Bank v. Brimhall, Utah,* 636 P.2d 481 (1981).

This Court has long recognized that there are significant differences between court trials and proceedings before administrative agencies and that the technical rules of evidence need not be applied before the latter.[7] Hearsay evidence is admissible in proceedings before administrative agencies.[8] However, findings of fact cannot be based *exclusively* on hearsay evidence. They must be supported by a residuum of legal evidence competent in a court of law.[9]

Therefore, a finding that the drink purchased by Agent Pectol contained more than one-half of one percent of alcohol by weight must be supported by legal evidence competent in a court of law. The state chemist's toxicology report constitutes such evidence.

Rule 63, Utah Rules of Evidence,[10] provides for exceptions to the hearsay rule. Subsection 15 of that Rule, entitled "Reports and Findings of Public Officials," specifically applies to the state chemist's toxicology report. The Rule makes admissible:

[F]actual data contained in written reports or findings of fact made by a public official of the United States or of a state or territory of the United States, if the judge finds that the making thereof was within the scope of the duty of such official and that it was his duty (a) to perform the act reported, or (b) to observe the act, condition or event reported, or (c) to investigate the facts concerning the act, condition or event and to make findings or draw conclusions based on such investigation ...."

Therefore, in order for the toxicology report prepared by the state chemist to be admissible under an exception to the

8. *Id.*

9. *Id.* at 486.

10. In effect at the time of this occurrence but since superseded by Rule 803(8), Utah Rules of Evidence, effective September 1, 1983.

hearsay rules, the state chemist must be a public official,[11] and making the report must be within the scope of his duties.

■ The state chemist is appointed by the Commissioner of the state Department of Agriculture[12] and is the chief administrative officer of the Division of Laboratories.[13] As such, the state chemist is a public official for purposes of the Utah Rules of · Evidence. Further, the state chemist has a direct duty to perform analytical tests for the Utah Liquor Control Commission.[14] If the Commission requests a toxicology report on a drink sample, the state chemist has the duty to perform the tests and report the results of the investigation, in this case the alcohol content of the drink.

■ Therefore, both tests of Utah Rule of Evidence 63(15) are met here. The state chemist's toxicology report is admissible under an exception to the hearsay rule, and the findings of the Commission are supported by legal evidence.

The Club, however, contends that *DeFusion Co. v. Utah Liquor Control Commission*[15] and *Club Stanyon Street v. Utah Liquor Control Commission*[16] dictate the outcome of this case. *DeFusion* and *Club Stanyon Street* are both distinguishable. In *DeFusion*, no evidence was submitted to the Commission as to the percentage of alcohol in the drink purchased by the agent. In *Club Stanyon Street*, samples of the drinks were admitted as evidence but no evidence was apparently admitted as to the specific evidence required by statute, no violation was proven in either case.

Here, with the chemist's report establishing the alcoholic content of the sample, coupled with Agent Pectol's testimony as to his nonmembership in the Club, a prima facie case as to the violation was made.[17] The Club failed to rebut that case. It offered no substantive testimony that Pectol was either a member or a guest of the Club. Further, it did not rebut the presumption of accuracy of the chemist's report either by calling the state chemist as a witness to testify as to the accuracy of the tests performed or by any other means.

■ Therefore, based on the evidence before the Commission, the Commission's finding of a violation and order of suspension was justified. We affirm.

OAKS, DURHAM and HOWE, JJ., and J. DENNIS FREDERICK, District Judge, concur.

STEWART, J., does not participate herein.

---

11. As defined by Utah R.Evid. 62(4). *Cf.* U.C.A., 1953, § 63–2–61(3).

12. U.C.A., 1953, § 4–2–9.

13. U.C.A., 1953, § 4–2–10.

14. U.C.A., 1953, § 32–1–11.

15. *Supra* n. 5.

16. Utah, 615 P.2d 435 (1980).

17. *Supra* n. 5. *See also* U.C.A., 1953, § 32–8–33.